SECURITY TRUST & SAV. BANK v. WM. R. STAATS CO. et al.

(Circuit Court of Appeals, Ninth Circuit. May 8, 1916. On Motion for Rehearing, June 2, 1916.)

No. 2691.

BANKRUPTCY ☞166(4)—VOIDABLE PREFERENCE—EXTENSION OF CREDIT ON CASH SALE.

Bankrupt, which was a brokerage corporation, within four months prior to the bankruptcy, bought from defendant, another brokerage company, certain shares of stock, the certificates were delivered, and it gave its check for the price. The check was refused payment, but at bankrupt's request defendant retained and twice more presented it, after which, and four days after the sale, defendant accepted bankrupt's note, secured by mortgage, for the purchase money. It made no effort to regain possession of the stock, which in the meantime was hypothecated by the bankrupt. *Held*, that whatever right of rescission defendant may have had was lost, and it became a general creditor, when it agreed to wait and to present the check a second and third time, and accepted security for the debt, and that, bankrupt being at the time insolvent, and defendant having reasonable ground to believe such fact, the mortgage constituted a preference, voidable at suit of the bankrupt's trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250, 251, 256; Dec. Dig. ☞166(4).]

Appeal from the District Court of the United States for the Southern District of California; Oscar A. Trippet, Judge.

Suit in equity by the Security Trust & Savings Bank, trustee in bankruptcy of. the Fielding J. Stilson Company, against the William R. Staats Company and the Title Insurance & Trust Company. Decree for defendants, and complainant appeals. Reversed.

This is a suit in equity between the Security Trust & Savings Bank, a corporation, trustee in bankruptcy of the estate of Fielding J. Stilson Company, a bankrupt corporation, and William R. Staats Company and Title Insurance & Trust Company, corporations. The complaint alleges: That upon July 2, 1912, petition in involuntary bankruptcy was filed against the Stilson Company, and on October 24, 1912, the Stilson Company was adjudged a bankrupt; that on March 12, 1912, the Staats Company was a general unsecured creditor of the Stilson Company for $3,870; that the Stilson Company was then insolvent, and the Staats Company knew, and had reasonable cause to believe, that the Stilson Company was insolvent; that on March 19, 1912, the Stilson Company made and delivered to the Title Insurance & Trust Company a deed of trust for certain realty in Los Angeles, which was recorded on March 20, 1912, and was received as security for the indebtedness of $3,870 due by the Stilson Company to the Staats Company; and it is alleged that the effect of the conveyance was to enable the Staats Company to receive a greater

percentage of its indebtedness than any other creditors of the same class, and that the conveyance was made by the Stilson Company to give the Staats Company a preference in violation of the bankrupt statutes. The trustee prays that the conveyance be vacated and declared void, and that it be decreed that neither the Staats Company nor the Title Insurance Company has any right to the property described in the conveyance.

The Staats Company and the Title Insurance & Trust Company, by answer, admitted the execution and delivery of the conveyance, but denied that it operated as a preference, and set up that the Staats Company was a creditor of the Stilson Company and that the deed of trust was made under these circumstances: That on the 19th of March, 1912, and for months before then, the Stilson Company and the Staats Company were stockbrokers in Los Angeles; that on March 15, 1912, the Stilson Company asked the Staats Company to sell it for cash certain shares in the Amalgamated Oil Company at $64.50 per share, and that the Staats Company sold to the Stilson Company 60 shares at $64.50, and delivered the certificates of stock to the Stilson Company with an understanding and agreement between the Stilson Company and the Staats Company that the sale was made for cash; that the Stilson Company then delivered to the Staats Company its check on a bank in Los Angeles in payment for the stock, and that in due course the Staats Company presented the check, but was notified that the Stilson Company had no funds wherewith to pay the check, and that it had not had funds wherewith to pay the check when the same was drawn, and that payment was refused; that the Staats Company notified the Stilson Company of the refusal of the bank to pay the check, but that the Stilson Company assured the Staats Company that the Stilson Company was sound, but that certain funds which it had expected to receive had been slightly delayed in receipt, and that, for that reason, there were not funds on deposit sufficient to pay the check; that the Stilson Company then agreed that, if the Staats Company would not exercise its right to rescind the sale, the Stilson Company would execute to the Staats Company its note for $3,870, and to secure the note would make a deed of trust on the property described in the deed of trust heretofore referred to; that in pursuance of such agreement the Staats Company refrained from exercising its right to rescind the sale, and accepted from the Stilson Company its note for $3,870, and the deed of trust referred to. Good faith on the part of the Staats Company is pleaded, and it is averred that a present fair consideration passed from the Staats Company to the Stilson Company for the deed of trust.

Over the objections of the defendants below (the Staats Company and the Title Insurance & Trust Company) the matter was referred to a special master to hear the issues raised by the complaint and the answer and to report the same to the District Court, together with findings of fact and conclusions of law. Thereafter the special master made his findings to the effect that on March 19, 1912, the Stilson Company was insolvent; that the transfer made by the Stilson Company to the Title Insurance & Trust Company was made and received as security for an indebtedness of $3,870 then due by the Stilson Company to the Staats Company, and that the effect of the transfer was to enable the Staats Company to obtain a greater percentage of its claim against the bankrupt than other creditors of the bankrupt of the same class; and that the Staats Company, when it received the transfer, had reasonable cause to believe that it was intended by the giving of the transfer to give a preference, and that the transfer was voidable at the instance of the trustee. The Staats Company and the Title Insurance & Trust Company, defendants below, filed exceptions to the findings and report of the special master. The District Court, after overruling several exceptions and sustaining others, dismissed the complaint. From the judgment of dismissal, the Security Trust & Savings Bank, as trustee of the Stilson Company, bankrupt, appeals.

W. T. Craig, of Los Angeles, Cal., for appellant.

O'Melveny, Stevens & Millikin and Walter K. Tuller, all of Los Angeles, Cal., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The appellant contends that the court erred in sustaining the exceptions of the defendants: To the finding of the special master that the deed of trust operated to enable the Staats Company to obtain a preference; to the finding that the deed of trust was executed to secure an antecedent debt, and that the transaction between the Stilson Company, bankrupt, and the Staats Company, was not a single transaction; to the finding that the 60 shares of stock had been hypothecated by the bankrupt prior to the execution of the trust deed; and to the finding that the Staats Company, at the time of the execution of the deed of trust, had reasonable cause to believe that a preference was intended.

The history of the transaction involved, as gathered from the evidence, is in accord with the findings of the special master, and may be briefly stated as follows: The Stilson Company was adjudged a bankrupt on October 24, 1912, upon an involuntary petition filed on July 2, 1912. The particular act which was made the basis of the adjudication in bankruptcy was that about March 14, 1912, while the Stilson Company was insolvent, it conveyed certain of its real property in Los Angeles to the William R. Staats Company with intent to hinder and delay the creditors of the Stilson Company, and with intent to prefer the Staats Company over other creditors of the bankrupt. In due course of proceedings in the bankruptcy court, it was there found that on March 15, 1912, the Stilson Company was indebted in the sum of more than $250,000, and that it had at that time assets of no greater value than $215,000, and that on the 19th of March, when insolvent, the Stilson Company had conveyed the realty heretofore referred to to the Staats Company, then a creditor of the Stilson Company, with intent to prefer the Staats Company over its other creditors, and that the effect of the transfer was to enable the Staats Company to receive payment of a greater percentage of its debt than any other unsecured creditor of the bankrupt.

In the present suit it was found by the special master, and the evidence well sustains the finding, that on March 15, 1912, the Stilson Company, in due course of business, bought from the Staats Company 200 shares of Amalgamated Oil Company stock at $64.50 per share. The Staats Company delivered certificates representing 60 shares, and gave a broker's duebill for 140 shares for subsequent delivery. On that day, March 15th, the bankrupt, to pay for the shares, gave its check for $12,900 to the Staats Company, payable at the Citizens' National Bank of Los Angeles, but on presentation of the check to the bank it was rejected for want of funds and was returned. On March 16th, Mr. Jardine, vice president of the Staats Company, had a talk with Mr. F. J. Stilson, president of the Stilson Company, concerning the rejected check, and was told by Stilson that the check would be made good, and Stilson asked that it be put through the bank again. On Monday, March 18th, the check was again presented at the bank, but rejected, and thereafter, again, on the 18th of March, Stilson, of the Stilson Company, asked an officer of the Staats Company to put it through the bank once more; but again it was rejected by the bank for want of funds to the credit of the

Stilson Company. Thereupon, at a conference between Mr. Jardine, of the Staats Company, and Mr. Stilson, of the Stilson Company, Stilson said he expected payment of $10,000 upon some real estate and that he would first take care of the "item" with the Staats Company; but on the 19th of March Stilson advised the Staats Company that he could not meet the payment, as the expected funds did not materialize, but that the Stilson Company had some realty in Los Angeles and would give the Stilson Company's equities as security. An employé of the Staats Company then went with Stilson to examine the real property offered as security, with the result that the real estate was accepted as security, and a trust deed was given by the Stilson Company on the afternoon of the 19th to the Title Insurance & Trust Company for the benefit of the Staats Company to secure a promissory note due one day after date in the sum of $3,870, the price of the 60 shares of stock of the Amalgamated Oil Company which had been delivered by the Staats Company to the Stilson Company. On March 20th, at 9 o'clock, this deed of trust was put on record, and on that same morning the Stilson Company suspended, and thereafter did no business.

The evidence also sustains the finding to the effect that the duebill for the 140 shares which had been given by the Staats Company to the Stilson Company, and the 60 shares also, had been hypothecated by the Stilson Company, and there is no evidence to show that, when the Staats Company agreed to give the Stilson Company time to obtain the money wherewith to meet its obligations, there was any suggestion of holding onto the stock which the Staats Company had sold to the Stilson Company. The Staats Company, with full knowledge of the rejection of the check, and without any then apparent thought of retaining a lien on the shares, expressly agreed with the Stilson Company to wait and again to put the check through the bank, and did so twice after it had first been rejected.

We agree with the special master in holding that, when the Staats Company accepted the mortgage, it was in lieu of cash, and that the transaction became one where the debtor, to secure an existing antecedent debt due by it to the creditor, gave security, and the creditor, confirming the sale, accepted the security. We do not think that the transaction can be looked upon as a new and present advancement to the Stilson Company; it was a sale and delivery of the 60 shares of stock, and they became part of the general assets of the Stilson Company. The evidence shows that the effect of the enforcement of the mortgage given by the Stilson Company when insolvent would be to give to the defendant the Staats Company a greater percentage of its claim against the bankrupt than other creditors of the same class, and under the facts the bankrupt must be held to have given a preference by the giving of such security to the Staats Company.

Our further view is that the evidence sustains the finding of the special master to the effect that, when the Staats Company received the trust deed from the Stilson Company, it had reasonable cause to believe that it was intended to give a preference. There is ample evidence to show that the Staats Company must have known of the

financial stress of the Stilson Company. Its officers knew when the mortgage was given that the Stilson Company then had checks outstanding, but rejected, and that the intent of the Stilson Company was to secure the Staats Company for the price of the 60 shares; it being in evidence that the Staats Company only wanted security for the 60 shares and did not recognize the duebill for 140 shares. We must affirm the view of the special master in his conclusions that all the circumstances surrounding the transaction must have caused the Staats Company to believe that the Stilson Company was insolvent and that the effect of the mortgage would be to prefer the Staats Company; and we hold that the master was correct in finding that it was intended that the transaction should operate as a preference. Sundheim v. Ridge Avenue Bank (D. C.) 138 Fed. 951; In re Dorr, 196 Fed. 292, 116 C. C. A. 112; Hotchkiss v. National City Bank, 201 Fed. 664, 120 C. C. A. 92; Id., 231 U. S. 50, 34 Sup. Ct. 20, 58 L. Ed. 115.

Finally, we believe that the Staats Company became a general creditor of the bankrupt, and that the transaction was broken in its continuity when the Staats Company agreed to wait for its money and .to send the check through the bank the second and third time, and when it agreed to wait to see whether the bankrupt would obtain money which its agents said was expected from the sale of certain other property, no effort having been made by the Staats Company to prevent the shares of stock which had been sold and delivered to the Stilson Company from passing out of the hands of the Stilson Company. That part of the argument made by the appellee in support of the action of the District Court wherein the point is made that the giving of the check by the Stilson Company was a representation that that corporation had sufficient funds to meet the check, and that, such representation not being true, a fraud was perpetrated on the Staats Company, and that title remained in the Staats Company, and did not pass until the note and deed of trust were accepted, has received our careful consideration. But whatever right of rescission existed because of misrepresentation by the Stilson Company in giving the check was abandoned by the position taken when security was accepted for the purchase money. Joslin v. Cowee, 52 N. Y. 90; Amer v. Hightower, 70 Cal. 440, 11 Pac. 697; Wendling Lumber Company v. Glenwood Lumber Company, 153 Cal. 411, 95 Pac. 1029.

The order of the District Court, sustaining the exceptions to the report of the special master and dismissing the bill, is reversed, and the cause is remanded, with directions to overrule the exceptions to the report of the master and to enter a judgment in favor of the complainant.

## On Motion for Rehearing.

PER CURIAM. We have given attentive examination to the appellees' motion and brief for rehearing. Stress is laid by the appellees upon the recent decision of the Supreme Court in Bailey, Trustee, v. Baker Ice Machine Company, 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. 275. But the facts of that case are very different from those here involved. The statement by Justice Van Devanter shows that

by a contract in writing it was there stipulated that the title to the machine installed should be and remain in the Baker Company until full payment of the purchase price; that the machine should be kept insured for the benefit of the Baker Company; that if default was made in the payment of the purchase price the Baker Company should have the right to resume possession and take the machine away; and that the Baker Company should have a right to file a mechanic's lien for materials and labor furnished under the contract. The court held that the title to the property was retained in the vendor and that the contract had been rightly held to be one of conditional sale. Much closer to the present case are National City Bank v. Hotchkiss, 231 U. S. 50, 34 Sup. Ct. 20, 58 L. Ed. 715, and Mechanics' Bank v. Ernst, 231 U. S. 60, 34 Sup. Ct. 22, 58 L. Ed. 121, where the opinions and decisions appear to us to be in direct accord with our decision herein.

Motion for rehearing is denied.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes